**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC ARMSTRONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 20 CV 2240 |
| | ) | |
| The CITY OF HARVEY, a municipal | ) | Judge |
| corporation, Harvey Mayor CHRISTOPHER | ) | |
| CLARK, Commander JUSTIN WINSTON, and | ) | Magistrate Judge |
| ACTING Harvey Chief of Police ROBERT | ) | |
| COLLINS | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, ERIC ARMSTRONG, by his attorneys, the HAMILTON LAW OFFICE, LLC, makes the following complaint against Defendants the CITY OF HARVEY ("Defendant CITY"), Harvey Mayor CHRISTOPHER CLARK ("Defendant CLARK"), Harvey Police Commander JUSTIN WINSTON ("WINSTON"), and Acting Harvey Chief of Police ROBERT COLLINS ("COLLINS"):

## JURISDICTION AND VENUE

1. This case is brought pursuant to 42 U.S.C. §1983 and 740 ILCS 174/15(b) and 20.1 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, the Illinois Whistleblower Act, and Illinois common law.

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

3. Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district and the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. ERIC ARMSTRONG ("ARMSTRONG") is a resident of Harvey, Illinois and has been a Harvey police officer for over 15 years.

5.   At all relevant times, Defendant CHIRSTOPHER CLARK was either the Mayor or mayor-elect of Harvey, Illinois, employed by Defendant CITY, acting under color of law and within the scope of his employment.

6.   At all relevant times, Defendant ROBERT COLLINS is or was the Harvey Police Chief or the acting police chief, employed by Defendant CITY, acting under color of law and within the scope of this employment.

7.   At all relevant times, JUSTIN WINSTON, was either a Harvey police officer or former Harvey Police Officer.

8.   Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and at all relevant times, was the employer and principal of Defendants CLARK, COLLINS and WINSTON.

9.   Should Plaintiff prevail on his claims, Defendant CITY is liable to Plaintiff as the principal on Plaintiff's state law claims pursuant to the doctrine of *respondeat superior*, and must indemnify the individual defendants on Plaintiff's federal claims pursuant to 735 ILCS 10/9-102.

**FACTS**

10.  ARMSTRONG is 50 years old and grew up in the city of Harvey.

11.  ARMSTRONG became a police officer in 2003 for the Village of University Park.

12.  As a new recruit, ARMSTRONG spent his first year as a police officer working in patrol for the Village of University Park.

13.  In August of 2004, ARMSTRONG was hired by the City of Harvey at the rank of detective.

14.  ARMSTRONG became a Harvey police officer so he could serve the community where he grew up.

15.  Since his hiring, ARMSTRONG has been assigned or detailed to various specialized units within the Harvey Police Department (HPD), including Investigations and Internal Affairs.

16. Since his hiring by Harvey in 2004 and until very recently, ARMSTRONG had never been assigned to patrol.

17. As of the date of this filing, ARMSTRONG has been a member of the Harvey Police Department for over 15 years.

18. ARMSTRONG has earned a solid reputation among his colleagues and has received favorable performance reviews.

19. In March of 2014 ARMSTRONG was promoted to the rank of sergeant and was assigned to supervise the Internal Affairs division (IAD), which consisted of himself and one other investigator

20. Between 2014 and January of 2020, ARMSTRONG worked for Harvey as an IAD investigator and supervisor, and his job was to investigate allegations of misconduct by Harvey police officers.

21. ARMSTRONG's investigations uncovered violations of HPD policies, as well as violations of state and/or federal laws, rules, or regulations.

22. ARMSTRONG reported his investigative findings and discipline recommendations to the Harvey Chief of Police.

23. In 2016 and 2017, ARMSTRONG was tasked with investigating allegations of HPD rules violations by Defendant WINSTON on multiple occasions. As a result of these investigations, ARMSTRONG recommended WINSTON's termination from HPD.

24. In 2018, WINSTON was terminated from HPD.

25. In 2019, ARMSTRONG's IAD unit conducted an investigation into obstruction of justice by Harvey police officer Sherry Bridges-Harris ("Harris").

26. ARMSTRONG cooperated with and disclosed information about Harris's illegal conduct to the Cook County Sheriff's police who were conducting a homicide investigation involving Harris's boyfriend.

### The FBI Investigation into the Harvey Police Department

27. For the past several years, the United States Federal Bureau of Investigations ("FBI") has been conducting its own investigation into the City of Harvey and its police department.

28. On information and belief, the FBI investigation into the Harvey Police Department is ongoing as of the time of filing this complaint.

29. ARMSTRONG became involved in the FBI's investigation in 2018 when he reported what he had reasonable cause to believe was unlawful misconduct – namely extortion – by an HPD employee.

30. Since 2018, ARMSTRONG has been cooperating with the FBI's corruption investigation of the HPD.

31. ARMSTRONG has also provided Internal Affairs documents to the FBI to aid in their investigation.

32. It was not part of ARMSTRONG's assigned duties or regular job responsibilities to cooperate with the FBI.

33. ARMSTRONG was protecting the public interest by cooperating in a federal criminal investigation into corruption within Defendant CITY.

### Harvey's Mayoral Election

34. In May 2019, the City of Harvey held a mayoral election.

35. The Chief of Police at the time, Gregory Thomas, ran for mayor against Defendant CLARK.

36. ARMSTRONG and other HPD officers supported their chief (Thomas) in his mayoral campaign.

37. WINSTON supported Defendant CLARK for mayor and worked on CLARK's personal security detail.

38. Defendant CLARK won the mayoral election and became the mayor of Harvey.

### Clark retaliates against ARMSTRONG

39. When CLARK took office, CLARK replaced Chief Thomas with Chief Eddie Winters ("Winters").

40. After CLARK took office, the FBI informed CLARK of their investigation into the Harvey Police Department and of ARMSTRONG's cooperation with them

41. Shortly thereafter, Defendant CLARK began pressuring Winters to fire ARMSTRONG or remove him from his position in Internal Affairs and transfer him to patrol.

42. CLARK wanted ARMSTRONG to be transferred to patrol in the hopes that this would cause ARMSTRONG to resign his position at HPD.

43. Defendant CLARK demanded that ARMSTRONG be transferred or terminated in retaliation for his support of Thomas in his mayoral campaign and/or for his disclosures to the FBI.

44. Winters refused to transfer ARMSTRONG to patrol and refused to terminate ARMSTRONG.

45. CLARK also demanded that Winters re-hire Defendant WINSTON and promote him to Commander.

46. Winters refused to promote WINSTON to Commander.

47. On January 24, 2020, Defendant CLARK fired Winters.

48. To replace Winters, CLARK hired the Dolton Chief of Police, Defendant COLLINS, as acting police chief.

49. On January 25, 2020, the day after Winters was fired, Defendants caused ARMSTRONG to be removed from his Internal Affairs position.

50. Defendant COLLINS then promoted Defendant WINSTON to the rank of Commander at the HPD.

51. In February 2020, Defendants caused ARMSTRONG to be transferred to street patrol.

52. When a police officer is removed from a specialized unit and re-assigned to street patrol against his or her wishes, it is considered punishment and reflects negatively on the officer's reputation.

53. In patrol, ARMSTRONG is required to work with and depend upon Harvey police officers whom he has investigated and/or for whom he has recommended discipline.

54. As a result of his transfer, ARMSTRONG's hours have changed from 8:00 a.m. to 4:00 p.m. Monday through Friday to irregular twelve hour shifts.

55. Defendant COLLINS and WINSTON are ARMSTRONG's commanding officers and as such have control over ARMSTRONG's assignments at HPD.

## COUNT I
(42 U.S.C. §1983, First Amendment Retaliation Claim – Political Affiliation)

56. Each of the preceding paragraphs is re-alleged as if fully restated here.

57. As more fully described above, ARMSTRONG was exercising his First Amendment right to support a political candidate of his own choosing when he supported Defendant CLARK's political rival, Thomas, in the 2019 Harvey mayoral election.

58. Defendants' actions in punishing ARMSTRONG for his political support of Thomas deters him and others from exercising their First Amendment right to support a political candidate of their own choosing.

59. ARMSTRONG's First Amendment activity was a motivating factor in Defendants' decision remove ARMSTRONG from his position in Internal Affairs and/or to transfer ARMSTRONG to patrol.

60. As a direct and proximate result of Defendants' misconduct, ARMSTRONG suffered damages, which will be proven at trial.

**WHEREFORE**, ARMSTRONG prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus punitive damages, as well as prejudgment interest, court costs, attorney's fees, and an immediate injunction ordering the City of Harvey to transfer ARMSTRONG from patrol where he is unsafe as a result of his prior position and reinstatement in HPD's Internal Affairs Unit without any reduction in pay or other material change from his prior position and such other relief as is just and equitable.

## COUNT II
(42 U.S.C. §1983, First Amendment Retaliation Claim – Speech)

61. Each of the preceding paragraphs is re-alleged as if fully restated here.

62. As more fully described above, ARMSTRONG engaged in activity protected by the First Amendment when he cooperated with the FBI's investigation into the HPD and Defendant CITY.

63. Unlawful misconduct by police officers is a matter of great public concern.

64. Defendants' attempts to silence ARMSTRONG by removing him from his position in Internal Affairs and transferring him to patrol deters him and others from exercising their First Amendment rights.

65. ARMSTRONG's First Amendment activity concerning his disclosures to the FBI was a motivating factor in Defendants' decision to remove ARMSTRONG from Internal Affairs and transfer him to patrol.

66. As a direct and proximate result of Defendants' misconduct, ARMSTRONG suffered damages, which will be proven at trial.

**WHEREFORE**, ARMSTRONG prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus punitive damages, as well as prejudgment interest, court costs, attorney's fees, and an immediate injunction ordering the City of Harvey to transfer ARMSTRONG from patrol where he is unsafe as a result of his prior position

and reinstatement in HPD's Internal Affairs Unit without any reduction in pay or other material change from his prior position and such other relief as is just and equitable.

## COUNT III
### (740 ILCS 174/15(b) and 20.1, Illinois Whistleblower Act)

67. Each of the preceding paragraphs is re-alleged as if fully restated here.

68. Defendant CITY is ARMSTRONG's "employer" as defined by the Illinois Whistleblower Act.

69. As more fully described above, Defendant CITY retaliated against ARMSTRONG for his disclosures of Harvey police officers misconduct to the FBI, the Cook County Sherriff's police and the Harvey chief of police, which ARMSTRONG had a reasonable cause to believe were violations of state and federal law, rules, or regulations.

70. As more fully described above, Defendant CITY retaliated against ARMSTRONG for his attempt to disclose and/or for his actual disclosure of public wrongdoing.

71. ARMSTRONG suffered retaliation for disclosing matters of public wrongdoing, including, but not limited to illegal conduct by Harvey police personnel such as extortion and obstruction of justice.

72. As a result of this retaliation, ARMSTRONG suffered damages.

**WHEREFORE**, ARMSTRONG prays for a judgment against Defendant CITY granting ARMSTRONG:

    A. An immediate injunction ordering the City of Harvey to transfer ARMSTRONG from patrol where he is unsafe as a result of his prior position in IAD;

    B. Reinstatement in HPD's Internal Affairs Unit without any reduction in pay or other material change from his prior position;

    C. Back pay with interest;

    D. Front pay;

    E. Prejudgment interest;

    F. The cost of any lost benefits;

G. Emotional damages;

H. Compensation for litigation costs, expert witness fees, and reasonable attorneys' fees;

I. Compensation for any other damages sustained and any other relief as is just and equitable.

**COUNT IV**
Intentional Infliction of Emotional Distress

73. Each of the foregoing paragraphs is incorporated as if fully restated here.

74. As more fully alleged in the preceding counts, Defendants wantonly and willfully caused Plaintiff to suffer severe emotional distress by dumping him back to patrol where he must rely upon fellow officers he has investigated or subjected to discipline.

75. Defendants conduct toward Plaintiff was extreme and outrageous.

76. Defendants knew or should have known that their acts would cause Plaintiff to suffer severe emotional distress.

77. As a direct and proximate result of Defendants' acts, Plaintiff has suffered and continues to suffer severe emotional distress.

**WHEREFORE**, ARMSTRONG prays for a judgment against Defendants in a fair and just amount sufficient to compensate him for his damages, plus punitive damages, as well as prejudgment interest, court costs, attorney's fees, and an immediate injunction ordering the City of Harvey to transfer ARMSTRONG from patrol where he is unsafe as a result of his prior position and reinstatement in HPD's Internal Affairs Unit without any reduction in pay or other material change from his prior position and such other relief as is just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

ERIC ARMSTRONG, Plaintiff

By: /s Torreya L. Hamilton
    Attorney for Plaintiff

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397